IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| JONATHAN MICHAEL NOLAND, ) | |
| ) | CASE NO. BK09-80873-TJM |
| Debtor(s). ) | A09-8048-TJM |
| JONATHAN MICHAEL NOLAND, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| IOWA STUDENT LOAN LIQUIDITY CORP., ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the debtor-plaintiff's motion for summary judgment (Fil. #16) and resistance by the defendant (Fil. #26). Ryan D. Caldwell represents the debtor, and Michael B. Abbott represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The debtor filed this adversary proceeding to determine the dischargeability of his student loan debt under 11 U.S.C. § 523(a)(8). He argues that the loans are not "qualified education loans" as defined in the statute, and he argues that repaying the student loans would cause him an undue hardship. He began his college career in 2000 at the University of Iowa, spending two-and-a-half years there, continued at Grace University in Omaha, Nebraska, from 2003 to 2005, and graduated from the University of Nebraska at Omaha in 2006. He received 11 loans from the Iowa Student Loan Liquidity Corp. ("ISLLC") between 2000 and 2005, totaling $59,533.00. He now seeks summary judgment on his complaint.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise set forth specific

facts showing that there is a genuine issue for trial. Id. The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins. Co., 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts are undisputed or otherwise established for purposes of this motion:

1.  The debtor is a 28-year-old male with no dependents. He resides in Omaha, Nebraska.

2.  The debtor elected to apply for, and received, student loans to fund his education at the University of Iowa in Iowa City, Iowa, in 2000. He received disbursements from government-subsidized loans through the U.S. Department of Education and from private student loans through ISLLC.

3. The debtor withdrew from the University of Iowa in March 2003 to move closer to home.

4.  He then attended Grace University in Omaha, Nebraska, to continue his studies. He continued to receive both federal and private student loans to pay for his education there.

5.  The debtor withdrew from Grace University to attend the University of Nebraska at Omaha in 2005 and completed his bachelor of general studies degree in May 2006.

6.  During the debtor's attendance at institutions of higher education, he incurred the following student loans from ISLLC, in addition to his federal student loans:

| Account Number | Date Received | Approximate Balance |
| --- | --- | --- |
| xxx0008 | 8/2000 | $16,464.00 |
| xxx0005 | 8/2001 | $8,339.00 |
| xxx0006 | 6/2002 | $2,892.00 |
| xxx0007 | 6/2002 | $1,370.00 |
| xxx0009 | 8/2003 | $4,389.00 |
| xxx0010 | 10/2003 | $4,000.00 |

| | | |
|---|---|---|
| xxx0011 | 8/2004 | $5,500.00 |
| xxx0012 | 5/2005 | $2,800.00 |
| xxx0013 | 6/2005 | $1,600.00 |
| xxx0014 | 8/2005 | $9,000.00 |
| xxx0015 | 12/2005 | $3,179.00 |

7. The interest rates on all of the loans with ISLLC range between seven and nine percent.

8. The debtor consolidated his federal student loans in December 2008. He qualified for a plan that allows him to pay $150.00 a month. The approximate balance of the federal loans is estimated at $60,000.00.

9. After graduating from the University of Nebraska at Omaha in 2006, the debtor became employed.

10. In 2006, the debtor made $16,612.00 in gross wages.

11. In 2007, the debtor made $26,497.00 in gross wages and took a disbursement of his mother's retirement account of $23,000.00. This disbursement led to the debtor owing federal income taxes of $4,723.00 and state income taxes of $2,151.00.

12. In 2008, the debtor made $33,703.00 in gross income.

13. In 2009, the debtor made $37,664.00 in gross income and owed $660.00 in federal income taxes.

14. The debtor currently is employed by PayPal and makes $15.50 an hour.

Under § 523(a)(8), "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents," debts for the following are not discharged:

> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

For purposes of this section, a "qualified education loan" is defined as:

(1) Qualified education loan. — The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses —
  (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
  (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
  (C) which are attributable to education furnished during a period during which the recipient was an eligible student.

Such term includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan.

26 U.S.C. § 221(d)(1).

"Qualified higher education expenses" are defined as:

(2) Qualified higher education expenses. — The term "qualified higher education expenses" means the cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087*ll*, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution[.]

26 U.S.C. § 221(d)(2).

The "cost of attendance" for a student in the debtor's situation means:

(1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study;

(2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a half-time basis, as determined by the institution;

(3) an allowance (as determined by the institution) for room and board costs incurred by the student which —
  (A) shall be an allowance determined by the institution for a student without dependents residing at home with parents;
  (B) for students without dependents residing in institutionally owned or operated housing, shall be a standard allowance determined by the institution based

-4-

>   on the amount normally assessed most of its residents for room and board; and
>       (C) for all other students shall be an allowance based on the expenses reasonably incurred by such students for room and board[.]

20 U.S.C. § 1087*ll*.

The debtor certified on each promissory note that he would use the proceeds for qualified higher education expenses or for costs associated with his attendance at school. He argues now that because some of the funds were used for dining out, purchasing gifts, paying for expenses including travel, car insurance, and gas, and for mental health treatment and medication, the loans were not "qualified education loans" and therefore are dischargeable, and he suggests that ISLLC dug its own hole by loaning him such amounts in excess of his tuition. The Fifth Circuit Court of Appeals dispensed with a similar argument by pointing out that such an interpretation would subvert the intent of the statute:

> Permitting students to discharge student loans in bankruptcy because the student spent the money on social uses, alcohol, or even drugs would create an absurd result. Students who used the loan proceeds to finance an education would retain the burden of paying them even after a chapter 7 discharge; irresponsible students who abused the loans would gain the benefits of discharge.

Murphy v. Penn. Higher Educ. Assistance Agency (In re Murphy), 282 F.3d 868, 873 (5th Cir. 2002).

Moreover, the definition of "cost of attendance" includes allowances "as determined by the institution" for transportation, room and board, and miscellaneous personal expenses. There is no evidence before the court of what each educational institution attended by the debtor deemed to be a reasonable allowance for such expenses. Rogers v. Key Bank, Nat'l Ass'n (In re Rogers), 374 B.R. 510, 515-16 (Bankr. E.D.N.Y. 2007). That is an additional basis for denying summary judgment on the debtor's argument that the loans were not "qualified education loans."

On the issue of undue hardship, summary judgment must likewise be denied. A debtor seeking discharge of an educational loan debt bears the burden of proving, by a preponderance of the evidence, that repayment of those loans would impose an undue hardship on him. Parker v. Gen. Revenue Corp. (In re Parker), 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005).

"Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson), 571 F.3d 775, 779 (8th Cir. 2009); Long v. Educational Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 553 (8th Cir. 2003) (citing Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981)). This requires an evaluation of the debtor's past, present, and reasonably reliable future financial resources; a calculation of the reasonable necessary living expenses of the debtor and his dependents; and any other circumstances unique to the particular bankruptcy case. Jesperson at 779 (citing Long, 322 F.3d at 554).

As the Eighth Circuit expressed in Long,

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt — while still allowing for a minimal standard of living — then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation — including assets, expenses, and earnings — along with the prospect of future changes — positive or adverse — in the debtor's financial position.

322 F.3d at 554-55; Reynolds v. Penn. Higher Educ. Assistance Agency (In re Reynolds), 425 F.3d 526, 532 (8th Cir. 2005).

In the Jesperson case, the Eighth Circuit Court of Appeals ruled that repayment of student loan debt exceeding $350,000.00 would not be an undue hardship for a single 43-year-old attorney in good health with modest expenses. The court stated "Jesperson's young age, good health, number of degrees, marketable skills, and lack of substantial obligations to dependents or mental or physical impairments weigh in favor of not granting an undue hardship discharge."

In the present case, the debtor indicates he is 28 years old, with a bachelor's of general studies degree from the College of Public Affairs and Community Service at the University of Nebraska at Omaha. He works in customer service at PayPal, and has been employed with that company for more than two years. He earns $15.50 per hour, plus occasional overtime. His gross wages for 2009 were $37,588.80. The debtor says, without evidentiary support, that he has no prospects of a promotion or increase in pay. The debtor's original Schedules I and J showed a monthly surplus of $98.16. The revised Schedule J filed in support of this motion shows increased expenses and a monthly deficit of $16.42. His monthly expenses include $150.00 toward his federal student loans. The debtor also references his diagnosis of bi-polar disorder, for which he receives treatment and medication, but indicates it does not affect his ability to work. As in Jesperson, the debtor is young, in good health, with no dependents, and possessed of marketable skills. His student loan debt is also significantly less than Jesperson's debt. As it stands, the record is insufficient to support a finding that the debtor's reasonable future financial resources are inadequate to permit repayment of the debt to ISLLC. The matter will be scheduled for trial.

IT IS ORDERED: The debtor-plaintiff's motion for summary judgment (Fil. #16) is denied.

DATED:    March 30, 2010

BY THE COURT:

   /s/ Timothy J. Mahoney   
United States Bankruptcy Judge

Notice given by the Court to:
*Ryan D. Caldwell    Michael B. Abbott    U.S. Trustee
Movant (*) is responsible for giving notice to other parties if required by rule or statute.